**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**GARY SCOTT STROUD,
D.O.C. # K81945,**

      **Plaintiff,**

**vs.**                        **CASE NO. 4:23-cv-235-WS-MAF**

**COLONEL JACOBS,
BARFIELD, and
K. STANFORD,**

      **Defendants.**
_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a prisoner proceeding pro se and in forma pauperis, initiated this case by filing a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging Defendants failed to protect him from an attack under the Eighth Amendment. ECF No. 1. Plaintiff subsequently filed a third amended complaint, ECF No. 19. The complaint was screened by the Court under 28 U.S.C § 1915 and deemed sufficient for service. ECF No. 20. Before the Court is Defendants' motion to dismiss, ECF No. 45. Plaintiff filed a response in opposition, ECF No. 56.

## I.    Allegations of the Third Amended Complaint, ECF No. 19

The Court accepts the non-conclusory, factual allegations in the third amended complaint as true. See <u>Oladeinde v. City of Birmingham</u>, 963 F.2d

1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993). Plaintiff was a prisoner at Liberty Correctional Institution during the relevant time period of March through May of 2023. ECF No. 19 at 5-8. Defendants Jacobs (Security Chief), Barfield (Head of Classification), and Stanford (Assistant Warden) were correctional officials on the Institutional Classification Team (ICT) at Liberty CI responsible for transfer recommendations. Id. at 5, 7, 8.

On March 28, 2023, the security staff were notified of an audio recorded "hit" on Plaintiff, ordered by a "Latin King" gang member. Id. at 7. In April 2023, Plaintiff requested a protective management transfer by submitting an informal grievance to Defendant Barfield. Id. at 6. The grievance was addressed to the three Defendants and explained the reasons for the transfer. Id. The grievance was denied because Plaintiff "hadn't been assaulted." Id. Plaintiff described his housing assignment as a "life threat" and submitted a "witness statement." Id. at 5. Both Plaintiff and the "gang sergeant" notified Defendants of the need for a transfer. Id. at 7.

At some point, Defendants—as part of the ICT—interviewed Plaintiff regarding his request. Id. at 6. Defendant Jacobs stopped the interview after Plaintiff answered one question and would not allow Plaintiff to explain his transfer request. Id. On May 1, 2023, ICT denied Plaintiff's request for a transfer and security ordered Plaintiff to return to his housing assignment. Id.

at 5. Within an hour of Plaintiff's return to his assigned dorm, he was "physically assaulted" by approximately 15 unidentified inmates. Id. at 6. He received medical attention for a concussion and other minor injuries and was "placed back on" protective management analysis. Id. at 6-7.

Plaintiff contends that the ICT Defendants violated his Eighth Amendment rights because they were deliberately indifferent to his need for safety and failed to protect him. Id. at 10. Though he sues Defendants in their official capacity only, he seeks $50,000 in compensatory damages and $250,000 in punitive damages. Id. at 2-3, 7.

As noted, Defendants are State prison officials. They have moved to dismiss the complaint on several grounds, including Eleventh Amendment immunity. ECF No. 45 at 3. Absent limited exceptions not present here, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment. Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); See also Kentucky v. Graham, 473 U.S. 159, 169, (1985). That "bar remains in effect when State officials are sued for damages in their official capacity." Kentucky, 473 U.S. at 169. In his reply, Plaintiff concedes error and seeks to "strike" the official capacity designation and instead "adopt" individual and official capacity designations. ECF No. 56 at

2. Plaintiff claims that as a pro se litigant, he did not realize more than one option could be selected on the court form. Id.

The Court construes Plaintiff's request liberally as a motion for leave to amend his complaint. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  A pro se litigant should be given the opportunity to amend if "a more carefully drafted complaint might state a claim" and the amendment would not be futile. Alberto v. Sec'y, Fla. Dep't of Corr., 770 F. App'x 467, 469 (11th Cir. 2019). "The fact that a complaint named the wrong defendant…is a curable defect." Id. Based on the discussion below, the Court believes allowing an amendment to reflect individual capacity claims would not be futile. Thus, it is appropriate to grant the Defendants' motion to dismiss the official capacity claims based on Eleventh Amendment immunity but allow Plaintiff the chance to file a fourth amended complaint and present the necessary additional allegations—here, individual capacity claims.

## II.    Standard of Review – Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts that show entitlement to relief is plausible.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Asking for plausible grounds…does not impose a probability requirement at the

pleading stage." Id. at 556. Instead, a claim is plausible when the court can draw "a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); See also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019).

At this stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (internal marks omitted.) Courts must disregard any conclusory allegations or legal conclusions masquerading as fact, assume the remaining facts are true—however doubtful—and determine if those facts are sufficient to proceed. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A well-pleaded complaint may proceed even if it appears that recovery is very remote and unlikely." Twombly, 550 U.S. 544 at 556 (quotations omitted).

The pleading standard is flexible, in line with Rule 8's command to give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506 (2002). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972)). That said, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely

groundless claim" does not proceed through discovery." <u>Dura</u>

<u>Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005).

In the context of this case, Plaintiff must provide enough non-conclusory facts in his third amended complaint to plausibly show Defendants, knowing of the risk, failed to take reasonable steps to abate the threat in violation of the Eighth Amendment.

## III.    Failure to Protect Claim

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." <u>Caldwell v.</u> <u>Warden, FCI Talladega</u>, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). This includes a duty "to protect prisoners from violence at the hands of other prisoners." <u>Farmer</u>, 511 U.S. at 833 (quoted in <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 616-17 (11th Cir. 2007)). However, not "every injury suffered by one prisoner at the hands of another…translates into constitutional liability for prison officials." <u>Id.</u> at 834; <u>See also</u> <u>Purcell v. Toombs Cty.</u>, 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.")

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." <u>Farmer</u>, 511 U.S. at 828. In the context of inmate safety, deliberate indifference occurs when a prison

official "actually…knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond…in an objectively reasonable manner." Rodriguez, 508 F.3d at 617. Actual knowledge of the risk can be based on direct or circumstantial evidence and includes situations "that suggest the defendant-official…had been exposed to information concerning the risk and 'must have known' about it.[1]" Farmer, 511 U.S. at 842. But if a prison official who knows of such a risk responds reasonably, "even if the harm…was not averted," there is not an Eighth Amendment violation. Id. at 844.

Liability for deliberate indifference cannot be avoided by arguing that "while [the prison official] was aware of an obvious, substantial risk to inmate safety, he did not know that the [Plaintiff] was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Id. at 843. "[I]t does not matter whether the risk comes from a single source or multiple sources." Id. The question is "whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id.

---

[1] A prison official cannot pull the wool over his eyes to escape liability by "refus[ing] to verify underlying facts that he strongly suspected to be true, or declin[ing] to confirm inferences of risk that he strongly suspected to exist (as when a prison official is aware of a high probability of facts indicating [a planned attack] but resists opportunities to obtain final confirmation)." Farmer, 511 U.S. at n.8.

Accordingly, Plaintiff must allege facts which demonstrate (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) a causal connection between the defendant's conduct and the Eighth Amendment violation. See Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015).

In the instant case, Plaintiff's claim revolves around threats made to his life which resulted in injury. Prison officials must possess enough details about a threat to enable them to conclude that the threat presents a "strong likelihood" of injury, not a "mere possibility." See, e.g., Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). This is because "[t]he unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Marbury v. Warden, 936 F.3d 1227, 1236 (11th Cir. 2019) (internal quotations omitted). Further, "an injury may, in some circumstances, be in a factor in assessing that ex ante risk, but it cannot be sufficient on its own to prove that a substantial risk existed." Brooks v. Warden, 800 F.3d at 1302. Courts cannot use hindsight to determine whether there was a violation of the Eighth Amendment. Id.

## IV.   Discussion

Defendants argue Plaintiff's third amended complaint should be dismissed because it fails to state a claim as it relates to a substantial risk of serious harm and causation. ECF No. 45 at 4-6. As to the first, Defendants say Plaintiff does not plead an "articulable threat" and does not "explain what the life threat is." Id. at 4-5.

Though Plaintiff's factual allegations are lacking in detail, they survive the low threshold of scrutiny the court must apply at the motion to dismiss stage—this includes accepting non-conclusory facts as true. Plaintiff specifically alleges that a Latin King gang member ordered a hit on him, that the hit was recorded, and security staff was notified. In short order, Plaintiff communicated this threat on his life by way of an informal grievance addressed to the three Defendants requesting a protective management transfer. Plaintiff supplied a witness statement that explained the threat and explained his reasons for a transfer. His grievance was denied by Defendant Barfield because an assault had not happened (yet). Defendants, as part of the ICT, conducted an interview with Plaintiff.  Defendant Jacobs stopped the interview after one question. His protective management request was again denied and when he returned to his dorm, he was attacked.

The Eleventh Circuit was presented with a similar, albeit stronger, fact pattern in Rodriguez and found, "the gang-related threats made on [Plaintiff's] life, which were explicitly reported to prison officials, present[ed] a substantial enough risk of harm to trigger [Defendant's] Eight Amendment duty to act."[2] 508 F.3d at 617 n.12. In the instant case, taking Plaintiff's allegations as true, Defendants were informed of the substantial-enough risk multiple times, including through a grievance from Plaintiff, Plaintiff's witness statement, and by the gang sergeant, yet recommended no changes be made. On the face of the complaint, Defendants took no "steps aimed at reducing the likelihood of the risk." Id.

Next, as to causation. Defendants concede that they, as the ICT, have the power to recommend the granting or denial of an inmate's protective management request, but argue they "cannot be the cause of Plaintiff's injuries" because they "are not the final decision makers." ECF No. 45 at 6. The final decision, per the Defendants, rests with the State Classification Office (SCO). Id. Defendants cite to the Florida Department of Corrections rules regarding protective management. Id. That rule, however, explicitly defines the ICT as being "responsible for making work, program, housing,

---

[2] Rodriguez came about at the summary judgment stage, so it is not surprising that facts were fully developed in discovery, unlike here.

and inmate status *decisions* at an institution or facility" in addition to "other classification recommendations to the [SCO]." Fla. Admin. Code R. 33-602.221(1)(g) (emphasis added).

Further, the FDOC rules provide that when an inmate requests protection via a written statement alleging fear of his safety from other inmates, the inmate "shall" be placed in administrative confinement, pending review of his request. Fla. Admin. Code R. 33-602.220(3)(c). Administrative confinement is defined as "the temporary separation of an inmate from inmates in general population in order to provide for security and safety until such time as a more permanent inmate management decision process can be concluded, such as a referral to disciplinary confinement, close management, protective management, or a transfer." Id. at (1)(a). The ICT is closely involved in the process. See generally Id.

The ICT is composed of senior correctional officials who are authorized to make housing and administrative confinement decisions as well as protective management recommendations. The ICT includes the Assistant Warden (Defendant Stanford), Chief of Security (Defendant Jacobs), and Classification Supervisor (Defendant Barfield). See Id.; ECF No. 19 at 2-3. Defendants cite no other authority for their causation argument, likely because it has been flatly rejected. See Farmer, 511 U.S. at 850; Nelson v.

Tompkins, 89 F.4th 1289, 1298 (11th Cir. 2024) ("It is enough to prove that the official had the authority to make recommendations with respect to placement."); Rodriguez, 508 F.3d at n.18 (Defendants' power to initiate protective management review and make recommendations to a classification team was sufficient to establish causal connection for failure to protect claim, even if final decision rested elsewhere).

At this stage, Plaintiff has alleged sufficient enough facts to show that, despite his request for protective management based on a recent death threat, of which Defendants were subjectively aware, Defendants declined to take any action outside of denying a grievance because an attack had not yet occurred and halting the interview process.[3]

Finally, Defendants spend the majority of their motion to dismiss arguing Plaintiff is not entitled to punitive damages. ECF No. 45 at 6-14. It is unnecessary to determine the issue of punitive damages until liability is established. At this stage, Defendants' request should be denied without prejudice.  Numerous cases have reached the same conclusion in resolving

---

[3] The Court reiterates that survival on a motion to dismiss does not indicate an action will ultimately succeed or that recovery is likely. If Defendants placed Plaintiff in administrative confinement or otherwise acted reasonably, the denial of a transfer alone will likely fail at the summary judgment stage. It is well-settled that inmates do not have a constitutional right against being transferred to another institution, have no right to incarceration in a prison of their choice, and are not entitled to any prisoner or status classification. Smith v. Crews, 738 F. App'x 981, 984 (11th Cir. 2018).

motions to dismiss.  E.g., Wright, 2024 WL 1558782, at *2 (citing to Watson

v. Harris, No. 1:23cv41/AW/ZCB, 2023 WL 9058715, at *2 (N.D. Fla. Dec. 8,

2023) adopted by, 2024 WL 23160 (denying motion to dismiss as to punitive

damages claim; Baker v. Rathel, No. 1:23cv3/AW/MJF, 2023 WL 7496224,

at *4-5 (N.D. Fla. Oct. 5, 2023) adopted by, 2023 WL 7497491 (same).

## V.    Recommendation

For the reasons stated above, it is respectfully **RECOMMENDED** that

Defendants' motion to dismiss, ECF No. 45, be **GRANTED** based on

Eleventh Amendment immunity, but otherwise **DENIED**. It is further

**RECOMMENDED** Plaintiff be provided an opportunity to file a fourth

amended complaint to cure the defect relating to adding Plaintiff's individual

capacity claims against Defendants, and this case be **REMANDED** for

further proceedings.

**IN CHAMBERS** at Tallahassee, Florida on September 5, 2024.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this**
**Report and Recommendation, a party may serve and file specific**
**written objections to these proposed findings and recommendations.**
**Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon**

all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).